UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| ALAN TOOTHAKER | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

NOW COMES Plaintiff, the United States of America, on behalf of its agency, the U.S. Drug Enforcement Administration ("DEA"), and hereby files the instant Complaint and in support thereof alleges as follows.

**I.   SUMMARY OF THE ACTION**

1. The United States brings this civil action against defendant, Alan Toothaker, VMD, to recover civil penalties under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, (the "CSA"), for defendant's violations of the CSA. A primary purpose of the CSA is to ensure that controlled substances are completely accounted for when dispensed and distributed. Failure to abide by the CSA's requirements to make and keep accurate records for controlled substances undermines the comprehensive regulatory structure envisioned by Congress and administered by the DEA. Defendant violated the CSA by failing to make and keep accurate records for controlled substances as required by 21 U.S.C. § 842(a)(5).

1

## II. JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the United States' CSA claims pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, as well as under the civil provisions of the CSA, 21 U.S.C. § 842(c)(1).

3.      This Court has personal jurisdiction over the defendant because, he, at all times relevant to this action, resided in, and/or transacted business in this District.

4.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c), because the defendant, at all times relevant to this action, transacted business in this District and/or because a substantial part of the acts or omissions giving rise to the claims occurred in this District.

## III. PARTIES

5.      Plaintiff is the United States, acting on behalf of its agency, the DEA.

6.      At all times relevant to this action, defendant: (a) was a Maine resident, a United States citizen, and a licensed doctor of veterinary medicine who maintains a private veterinary practice in Ellsworth, Maine; (b) held a DEA Registration, pursuant to 21 U.S.C. §§ 822 and 823; and (c) had a place of business in Ellsworth, Maine that was a controlled premise within the meaning of 21 U.S.C. § 880(a) and 21 C.F.R. § 1316.02(c).

## IV. THE CONTROLLED SUBSTANCES ACT

7.      All persons who dispense controlled substances are regulated by the CSA, which establishes a closed system of controls over all stages of the dispensing and distribution of controlled substances in the United States. The Attorney General has promulgated regulations for "the registration and control of the ... dispensing of controlled substances." 21 U.S.C. § 821. "[C]ontrolled substances are strictly regulated . . . because of their potential for abuse and likelihood to cause dependence when abused

and because of their serious and potentially unsafe nature if not used under the proper circumstances." 75 Fed. Reg. 61,613 – 61,617 (Oct. 6, 2010).

8. Under the CSA, the DEA regulates pharmaceutical drugs that are classified as controlled substances because of their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision. Controlled substances are classified in five schedules according to the characteristics of each substance.

9. Under the CSA, all dispensers of controlled substances must register with DEA and maintain strict accounting for such transactions. "Dispense" includes, among other things, the issuance of a prescription by a physician. 21 U.S.C. §§ 802(10) and (21). Thus, individuals who prescribe controlled substances must have a DEA Registration. 21 U.S.C. § 822(a)(2), *See also* 21 C.F.R. § 1300.01(b) ("Dispenser means an individual practitioner, institutional practitioner, pharmacy or pharmacist who dispenses a controlled substance.").

10. Consistent with the statutory purpose of ensuring that controlled substances are secured and accounted for when received, dispensed, and distributed, the CSA imposes extensive responsibilities on a DEA registrant to secure controlled substances as well as to make and keep accurate records related to controlled substances.

11. For example, the CSA requires that controlled substances listed in Schedules II-V be stored in a securely locked, substantially constructed cabinet. 21 C.F.R. § 1301.75(b).

12. The CSA also requires that the DEA registrant maintain "a complete and accurate record of each substance manufactured, imported, received, sold, delivered, exported, or otherwise disposed of by" the registrant. 21 C.F.R. § 1304.21(a).

13. The CSA requires that a purchaser of controlled substances record the number of commercial or bulk containers furnished on each item and the dates on which the containers are received by the purchaser. 21 C.F.R. § 1305.13(e).

14. Each person registered or authorized to dispense controlled substances must maintain records to include the name and address of the person to whom a controlled substance was dispensed, the date of dispensing, the number of units or volumes dispensed, and the written or typewritten name or initials of the individual who dispensed or administered the substance on behalf of the dispenser. 21 C.F.R. § 1304.22(c).

15. The CSA further requires that a DEA registrant "take a new inventory of all stocks of controlled substances on hand at least every two years," known as a biennial inventory. 21 C.F.R. § 1304.11(c).

16. Every such inventory and other records required to be kept under the CSA must be kept by the DEA registrant and be available for at least two years for inspection and copying. 21 C.F.R. § 1304.04(a).

17. There are also limitations on the availability or number of refills for a controlled substance prior to requiring the issuance of a new prescription. For example, a Schedule III-IV controlled substance prescription must be reissued after six months of its original issue date or after five refills. 21 C.F.R. §§ 1306.21(a); 1306.22(a).

18. Pursuant to the CSA, a failure to adhere to these requirements creates liability of up to $18,170 under the CSA, 21 U.S.C. § 842(c)(B)(i) and 28 C.F.R. § 85.5,

for each instance of refusing or negligently failing to make, keep, or furnish records as required under the CSA. A failure to reissue new prescriptions as required by 21 C.F.R. § 1306.22(a) is subject to a civil penalty of up to $78,312 for each violation. 21 U.S.C. § 842(c)(1)(A).

## V.   FACTUAL BACKGROUND

### A.   The DEA's Investigation of Defendant

19.   During the period of May 2023 and July 2023, the DEA Portland Resident Office conducted an inspection at Dr. Toothaker's registered location.  The DEA reviewed records from January 2021 through February 2024.  The DEA counted twelve (12) controlled substances at Dr. Toothaker's registered location.  An audit was not completed due to record keeping deficiencies.  DEA utilized administrative subpoenas to account for purchases of controlled substances made by Dr. Toothaker.

20.   This inspection, including responses to administrative subpoenas, revealed several violations of the Controlled Substances Act.

21.   For example, Dr. Toothaker designed and had implemented an environment, which provided minimal oversight of the ordering, receiving, and handling of controlled substances. This lack of oversight created an opportunity for significant diversion of controlled substances, particularly Tramadol.

22.   More specifically, at Dr. Toothaker's veterinary clinic, he maintained two safes (serial numbers H165284 and 974917). During DEA's initial on-site inspection, both safes contained controlled substances stored with non-controlled substances. Dr. Toothaker acknowledged that other employees had access to these safes, and thus, in turn, controlled substances without supervision.

23. By way of further example, Dr. Toothaker could not account for controlled substances purchased, dispensed, and administered due to record keeping deficiencies.

24. Dr. Toothaker also indicated that, as a practice, he did not conduct biennial inventories at his registered location.

25. Other records, required by the CSA, were either not readily retrievable or wholly nonexistent. For example, at the time of DEA investigator's on-site inspection, Dr. Toothaker was unable to provide any executed DEA Form 222s or applicable dispensing logs for certain controlled substances.

26. When additional records were subsequently provided, they were similarly deficient. For example, Dr. Toothaker provided DEA Form 222, #203382286, which failed to record the number of commercial or bulk containers furnished or the date received by the purchaser.

27. By way of further example, a review of other records pertaining to certain dispensing of phenobarbital tablets indicated that controlled substances inventory was transferred to animals in the boarding kennel adjacent to the clinic, and that prescriptions were documented but refilled continually.

28. Dr. Toothaker further indicated that, as a practice, he has transferred controlled substances inventory to another clinic location, which he operates one day per week, located in Columbia Falls, Maine. Dr. Toothaker does not maintain a registration for any location other than the Small Animal Clinic in Ellsworth, Maine.

29. These deficiencies, taken in conjunction, reveal a practice that lacked sufficient security and oversight such that it would be difficult, if not impossible, to determine whether controlled substances were missing, by whom they were taken, and when.

30. This is not merely a hypothetical concern. DEA investigators identified that Dr. Toothaker had purchased a particularly high amount of Tramadol—more than 28,000 tablets—between January 1, 2021, and May 5, 2023. Tramadol is an opioid medicine used for relief of moderate to severe pain. It is a Schedule IV controlled substance.

31. In this investigation, DEA investigators compared Dr. Toothaker's dispensing records with purchasing records for the two-year period beginning in May 2021. Out of 25,500 Tramadol ordered, Dr. Toothaker's dispensing records only accounted for 16,938 tablets.

32. Dr. Toothaker had not reported any theft, loss, or destruction of controlled substances despite such a large variance.

## COUNT I:  RECORD VIOLATIONS

(21 U.S.C § 842(a)(5))

33. Paragraphs 1 through 32 are realleged as though fully set forth herein.

34. Defendant failed to comply with the requirements of the CSA by failing to secure and account for all controlled substances.

35. More specifically, Dr. Toothaker committed the following CSA violations:

   a) He failed to record destruction of controlled substances, as required by 21 C.F.R. § 1304.21(e) and in violation of 21 U.S.C. § 842(a)(5);

   b) He failed to submit a DEA Form 106, as required by 21 C.F.R. § 1301.76(b) and in violation of 21 U.S.C. § 842(a)(5);

   c) He failed to keep every inventory and other records required to be kept under this part…available, for at least 2 years from the date of such inventory or records, for inspection and copying by authorized

employees of the Administration, as required by 21 C.F.R. § 1304.04(a), and in violation of 21 U.S.C. § 842(a)(5);

d) He failed to maintain a biennial inventory as required by 21 C.F.R. § 1304.11(c), and in violation of 21 U.S.C. § 842(a)(5);

e) He failed to record the number of commercial or bulk containers furnished on each item and the dates on which the containers are received by the purchaser, as required by 21 C.F.R. § 1305.13(e), and in violation of 21 U.S.C. § 842(a)(5);

f) He failed to maintain records that are readily retrievable, as required by 21 C.F.R. § 1304.04(g), and in violation of 21 U.S.C. § 842(a)(5);

g) He failed to keep records on a current basis, a complete and accurate record of each substance… received, sold, delivered…, as required by 21 C.F.R. § 1304.21(a), and as required by 21 U.S.C. § 842(a)(5);

h) He failed to maintain adequate records as a dispenser, as required by 21 C.F.R. § 1304.22(c), and in violation of 21 U.S.C. § 842(a)(5);

i) He failed to reissue a Schedule III-IV controlled substance prescription after six (6) months of its original issue date, as required by 21 C.F.R. § 1306.22(a), in violation of 21 U.S.C. § 842(a)(5); and

j) He failed to issue a new prescription after five refills, as required by 21 C.F.R. § 1306.22(a), in violation of 21 U.S.C. § 842(a)(5).

36. Each of the record violations was in contravention of 21 U.S.C. § 842(a)(5)

such that defendant is subject to a civil penalty of up to $18,170 for each violation. 21 U.S.C. § 842(c)(1)(B)(i) and 28 C.F.R. § 85.5.

37. A failure to reissue new prescriptions as required by 21 C.F.R. § 1306.22(a) is subject to a civil penalty of up to $78,312 for each violation. 21 U.S.C. § 842(c)(1)(A).

WHEREFORE, Plaintiff the United States requests that judgment be entered in its favor and against defendant on Count One, civil penalties per each violation pursuant to 21 U.S.C. §§ 842(c)(1)(B)(i) and (c)(1)(A), and all other relief this Court deems just and proper.

Dated: January 28, 2025
      Portland, Maine

Respectfully submitted,

DARCIE N. MCELWEE
United States Attorney

/s/ *Trevor H. Taniguchi*
Trevor H. Taniguchi
Assistant United States Attorney
100 Middle Street, East Tower, 6th Floor
Portland, Maine 04101
(207) 771-3216
Trevor.Taniguchi@usdoj.gov